IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Marta Iris GONZALEZ CENTENO, | |
| Plaintiff, | Civil No. 17-12284 (RBK) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal of Plaintiff Marta Iris Gonzalez Centeno (Doc. No. 1) seeking review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claims for Supplemental Security Income benefits under the Social Security Act. For the reasons below, the Court **AFFIRMS** the ALJ's decision denying benefits.

**I.     BACKGROUND**[1]

**A.  Procedural and Plaintiff's History**

Plaintiff Marta Iris Gonzalez Centeneo is a 38-year-old woman who lives in Camden, New Jersey, with her husband, who is unwell, and two kids, ages eight and nineteen. (R. at 65, 67, 89.) Plaintiff is five feet and three inches tall, weighing 143 pounds. (R. at 65.) She was educated in Puerto Rico but did not finish 12th grade because she needed to care for her ailing mother. (R. at 67.) Plaintiff has no past earnings or work. (R. at 67.)

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the instant motion. "R." in citations refers to pages in the administrative record. Additional facts are set forth as needed in the "discussion" section below.

On August 16, 2013, when she was 36-years-old, Plaintiff filed her initial claim for benefits because of diabetes, stomach surgery, ulcer, and depression. (R. at 89.) In making this claim, she alleged disability beginning on June 12, 2012. (R. at 89.) Plaintiff's application was denied initially on February 10, 2014. (R. at 15.) On June 8, 2014, it was denied again on reconsideration. (R. at 15.) Plaintiff then filed a request for a hearing, which was held on August 16, 2016, when Plaintiff appeared and testified with the assistance of a Spanish interpreter and her counsel. (R. at 15.) The ALJ issued a decision on May 2, 2017, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15–46.) This appeal followed for review of that decision. (Doc. No. 1.)

### B. ALJ Hearing and Medical Evidence

At the hearing before the ALJ, the ALJ probed Plaintiff's various health issues. Plaintiff's "primary" issues, for example, include chronic kidney disease and mental health issues. (R. at 63.) On mental health, Plaintiff explained that she is medicated for depression. (R. at 69.) She stated that the medication makes her feel better sometimes, but sometimes she feels like she is "deteriorating with it." (R. at 69.) She noted, however, that her depression has never been so bad that she required overnight hospitalization. (R. at 69.) She also explained that she receives treatment for these issues twice a week at Nueva Vida and visits Dr. Monte, her treating psychiatrist, every month. (R. at 69–70, 73.) She stated that her mental health issues caused her to "hear voices," but "with the medication, it's a little bit better," and that she is "not listening to those voices as much anymore." (R. at 73.)

Plaintiff has also been diagnosed with neuropathy, both by the consultative examiner and by her treating physician, and she has cirrhosis of the liver, unrelated to alcohol. (R. at 63.) Plaintiff suffers from diabetes, which began when she was pregnant with her daughter. (R. at 68.)

She could not recall how long she has been on insulin but stated that it has been for "a while." (R. at 68.) Plaintiff stated that she does injections in the morning, noon, afternoon, and in the evening. (R. at 68.)

Although Plaintiff did not know if it was caused by her diabetes (R. at 71), Plaintiff had stomach surgery for an ulcer and obstruction, which delayed emptying. (R. at 64, 70.) In that surgery, doctors removed part of Plaintiff's stomach. (R. at 70.) Although not in the spot of her surgery, Plaintiff testified that she experiences pain in her lower abdomen, the side of which feels like a big hard ball; she also experiences lower back pain. (R. at 70.) As the ALJ explained, the medical evidence suggested that Plaintiff's back pain was not due to her kidney impairments. (R. at 18.) Because of her back pain, Plaintiff explained that she can sit comfortably for twenty to twenty-five minute and can stand comfortably for about ten to fifteen minutes before her legs feel numb. (R. at 71.) She stated that she cannot walk much either because her feet become numb. (R. at 71.) She stated that she could lift an eight-pound gallon of milk, sometimes cook for herself, sometimes do laundry, tries to clean her house, and goes to the grocery store with her daughter for about an hour or half an hour twice per month. (R. at 72.)

Plaintiff explained that a home health aide helps care for her, her husband, and her son in their house. (R. at 66; *see also* R. at 919–1110.) Plaintiff explained that the aide spends seven hours per week in the home for Plaintiff alone and an additional eight hours for the group; those eight hours are divided among the three individuals. (R. at 64.)

Dr. Monte, Plaintiff's treating psychiatrist, evaluated her in December 2015 and diagnosed her with schizoaffective disorder and prescribed Fanapt for mood, Pristiq for depression, BuSpar for anxiety, and Trazodone for sleep. (R. at 653.) Dr. Monte also completed a medical source statement regarding Plaintiff's mental impairments and her ability to do work related activities.

3

(R. at 632–634.) That report, in which Dr. Monte largely checked boxes and did not provide clear or thorough explanatory responses to support her assessment, indicated that Plaintiff suffered from several mental limitations. (R. at 632–634.) Those limitations included a moderate limitation in understanding and remembering simple instructions; a marked limitation in carrying out simple instructions; a marked limitation in making judgments on simple work-related decisions; an extreme limitation in understanding, remembering, and carrying out complex instructions; and a marked limitation in making judgments on complex work-related decisions. (R. at 632.)

As for Plaintiff's ability to interact with others, Dr. Monte checked boxes indicating that Plaintiff had an extreme limitation interacting appropriately with the public; a marked limitation interacting appropriately with supervisors and co-workers; and an extreme limitation in responding appropriately to unusual work situations and to changes in a routine work setting. (R. at 633.) Again, these findings were not accompanied by clear or thorough explanatory answers supporting the basis of the opinion.

### C. ALJ Decision

On May 2, 2017, the ALJ issued a thirty-one page decision denying Plaintiff's disability claim. In doing so, the ALJ carried out the five-step process and found the following.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2013. (R. at 17.) At step two, the ALJ found that Plaintiff had "severe" impairments including diabetes, diabetic neuropathy, gastritis status post gastrectomy, nephrolithiasis, and depressive disorder. (R. at 17.) However, the ALJ found that Plaintiff's hypothyroidism, back pain, non-alcoholic hepatic steatosis, headaches, and cystitis were non-severe because the record did not support a conclusion that they caused significant vocationally relevant limitations at all times relevant to the ALJ's decision. (R. at 17–20.) At step three, the

4

ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. at 20.) Although the ALJ discussed several pieces of evidence in making this determination, the ALJ specifically remarked on Plaintiff's ability to interact with others, finding that Plaintiff has "mild limitations" in such interaction. (R. at 22.) In arriving at this conclusion, the ALJ assigned "little weight" to the opinion of Plaintiff's friend, Ms. Izquierdo, who opined that Plaintiff had significant limitations in mental functioning, because "there is no evidence that [Plaintiff] has reduced functioning outside her home," Plaintiff "has not engaged in altercations in public," and Plaintiff "has not exhibited behavior with authority figures in hospitals or in doctors' offices." (R. at 22.)

After concluding the step three discussion, the ALJ calculated Plaintiff's residual functional capacity ("RFC"). This is the focus of Plaintiff's appeal. Specifically, the ALJ found that "[a]fter careful consideration of the entire record," Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a) except as follows. (R. at 24.) Plaintiff can sit for up to six hours per day but no more than one hour at a time and then would need to stand or shift positions for about five minutes per hour while remaining on tasks. (R. at 24.) The ALJ also limited Plaintiff to low stress work, defined as simple, routine, unskilled work having no strict production quotas such as assembly like work. (R. at 24.) Finally, the ALJ's RFC permitted Plaintiff to be off task five percent of the work day in addition to normal breaks due to symptoms. (R. at 24.)

In calculating this RFC, the ALJ discussed opinion evidence from Dr. Monte regarding Plaintiff's alleged limitations. Specifically, the ALJ found:

> The undersigned assigns little weight to [Dr. Monte's] opinion that the claimant had a marked limitation in carrying out simple instructions and making judgments on simple work related activities and that she had an extreme limitation in her ability to interact appropriately with the public and respond appropriately to unusual work situations and to changes in a routine work settling. She had a marked limitation in her ability to interact appropriately with supervisors and co-workers. Her opinion is not consistent with her

5

treatment notes or the conclusions of staff at Nueva Vida. The claimant had reported that she was doing fine from March 2016 to May 2016. The claimant had received GAF scores of 60 throughout her treatment with Nueva Vida. The basis of Dr. Monte's opinion is unclear when compared to the claimant's treatment notes from Dr. Monte. The undersigned assigns great weight to the remainder of her opinion. It is consistent with the conclusions in Finding 3 above.

(R. at 43.) The ALJ also did not fully credit Plaintiff's reports of pain. Specifically, the ALJ found that Plaintiffs "reports of pain are not consistent with the medical record as a whole," and that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant." (R. at 39–40.)

After noting Plaintiff's relationship with the home health worker, noting that Plaintiff started treatment with the worker for her diabetes in February 2014, the ALJ discussed the home health worker in calculating the RFC. (R. at 26.) Specifically, the ALJ explained that although Plaintiff has a home health care worker, "the individual is not in the home for more than a few hours a week," and "the medical record suggests that her main purpose is to assist in managing [Plaintiff's] glycemic control and for dietary assistance." (R. at 42.) The ALJ then proceeded to thoroughly analyze the various other opinions of record, though Plaintiff's instant appeal hinges mostly on the ALJ's discussion of the health worker, Dr. Monte, and her complaints of pain.

After calculating the RFC, the ALJ noted that Plaintiff has no past relevant work, was a younger individual on the application date, and has a limited education but can communicate in English. (R. at 44–45.) At step five, the ALJ relied on testimony from the vocational expert at the hearing and found that considering Plaintiff's age, education, work experience, and RFC, jobs exist in the national economy that Plaintiff could perform. (R. at 45.) Accordingly, the ALJ denied Plaintiff's claim for benefits.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, Plaintiff challenges four aspects of the ALJ's decision. First, she claims that the ALJ erred by failing to address lay evidence from home healthcare providers regarding Plaintiff's functional limitations. (Pl.'s Br. at 1.) Second, she claims that the ALJ erred in failing to properly evaluate Dr. Monte's opinion. (*Id.*) Third, Plaintiff claims that the ALJ erred in improperly evaluating her alleged pain and limitations. (*Id.*) Finally, Plaintiff claims that the ALJ erred in finding that the Commissioner sustained her burden at step five of showing that other work existed in the national economy for Plaintiff to perform. (*Id.*) None of Plaintiff's claims provide a basis to remand, and substantial evidence supports the ALJ's findings.

**A. Home Healthcare Provider**

Plaintiff argues that the ALJ "failed to consider documented limitations" from the home healthcare provider because the ALJ did not address the contents of the home health care provider evaluations, which, according to Plaintiff, demonstrate significantly impaired function. (*Id.* at 23–26.) The Court finds no such error.

The ALJ's duties are well-settled. The determination of a claimant's disability is reserved for the ALJ. 20 C.F.R. § 404.1527(d)(1). However, the ALJ is responsible for "evaluat[ing] all relevant evidence and to explain the basis for his or her conclusions." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482; *see also Fargnoli*, 247 F.3d at 42 (noting that an ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records"). However, the ALJ "cannot reject evidence for no reason or

for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, contrary to Plaintiff's contentions, the ALJ sufficiently considered the evidence in the record from the home health aide. Throughout the ALJ's thorough thirty-one page opinion, the ALJ noted Plaintiff's treatment with the home health aide. The ALJ noted, for example, that Plaintiff "started treatment with a home health aide for her diabetes on February 2, 2014," and that this treatment "continued through the period at issue." (R. at 26; *see also* R. at 40.) The ALJ further noted that "[w]hile Plaintiff has a home health care worker, the individual is not in the home for more than a few hours a week." (R. at 42.) Additional statements confirm that the ALJ properly considered the record evidence: the ALJ stated that "*the medical record suggests* that the [worker's] main purpose is to assist in managing her glycemic control and for dietary assistance." (R. at 42 (emphasis added).) In fact, in making all of these statements, the ALJ cited to the exhibit in the record containing the evidence that Plaintiff claims was not considered. (R. at 42 (citing Exhibit 28f).) The ALJ was not required to discuss every treatment note in the voluminous record. Accordingly, the Court cannot conclude, as Plaintiff suggests, that the ALJ failed to consider the record evidence involving the home health aide. (Pl.'s Br. at 23–26.)

Because Plaintiff incorrectly argues that that the ALJ failed to "consider" the relevant evidence, Plaintiff does not directly argue that the ALJ failed to provide sufficient reasons for not crediting the content of the home health worker reports.[2] (Pl.'s Br. at 25–26.) Thus, even if the

---

[2] The Court cannot conclude that the ALJ failed to properly explain why the ALJ did not credit the home health aide's lay opinion as to Plaintiff's claimed limitations. In noting that the home health care worker is "not in the home for more than a few hours a week" and that her "main purpose is to assist in managing her glycemic control and for dietary assistance," (R. at 42), the ALJ provided a sufficient explanation as to the basis for not crediting the health worker evidence. *See Cotter*, 650 F.2d at 482. Although Plaintiff argues that the heath aide was responsible for more than just glycemic control and dietary assistance, Plaintiff's argument does not contradict the ALJ's

10

Court were to credit Plaintiff's claim that the ALJ failed to properly consider the evidence, Plaintiff has failed to suggest why that would constitute harmful error here. Merely identifying an alleged error is not enough to warrant remand; a claimant must explain "how the . . . error to which he points could have made any difference." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (finding "no basis to remand" when plaintiff "merely assert[ed] that harm was done" but "entirely sidestep[ped] the question" of "how [plaintiff] might have prevailed" if the ALJ had been more thorough").

### B. Dr. Monte

Next, Plaintiff claims that the ALJ erred in evaluating the opinion of Plaintiff's treating physician, Dr. Monte. (Pl.'s Br. at 26–37.) The Court disagrees.

In determining a claimant's RFC, the ALJ must consider all evidence before him, and "may weigh the credibility of the evidence, . . . giv[ing] some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Commissioner*, 220 F.3d 112, 121 (3d Cir. 2000). *Burnett*, however, does not require an ALJ to use any specific "magic words" or to adhere to a particular format in conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Nor must an ALJ "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. The ALJ is simply required to indicate how the evidence was weighed and evaluated, in a clear enough way to permit judicial review. *Leonardo v. Comm'r of Soc. Sec.*, No. 10-cv-1498, 2010 WL 4747173, at *6

---

conclusion about the worker's "main purpose," nor does it speak to the short amount of time that she spent in the home each week. (Pl.'s Br. at 25.) Even assuming the matter could have been decided differently, this Court cannot disturb the ALJ's conclusions, for substantial evidence supports them. *See Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) ("[W]e will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied.").

(D.N.J. Nov. 16, 2010) (citing *Caruso v. Comm. of Soc. Sec. Admin.*, 99 F. App'x 376, 379–81 (3d Cir. 2004). "Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Commisioner of Social Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

The Court finds no error in the ALJ's discussion of Dr. Monte and her assessment of Plaintiff's limitations. Dr. Monte found, as the ALJ noted, that Plaintiff had the following limitations: (1) an extreme limitation in understanding, remembering, and carrying out complex instructions; (2) a marked limitation in making judgments on complex work related decisions, carrying out simple instructions, and making judgments on simple work related activities; (3) a moderate limitation in her ability to understand and remember simple instructions; (4) an extreme limitation in her ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting; and (5) a marked limitation in her ability to interact appropriately with supervisors and co-workers. (R. at 43.)

The ALJ assigned "little weight" to portions of Dr. Monte's opinions and "great weight" to the remainder of her opinion. (R. at 43.) Specifically, the ALJ found:

> The undersigned assigns little weight to [Dr. Monte's] opinion that the claimant had a marked limitation in carrying out simple instructions and making judgments on simple work related activities and that she had an extreme limitation in her ability to interact appropriately with the public and respond appropriately to unusual work situations and to changes in a routine work settling. She had a marked limitation in her ability to interact appropriately with supervisors and co-workers. Her opinion is not consistent with her treatment notes or the conclusions of staff at Nueva Vida. The claimant had reported that she was doing fine from March 2016 to May 2016. The claimant had received GAF scores of 60 throughout her treatment with Nueva Vida. The basis of Dr. Monte's opinion is unclear when compared to the claimant's treatment notes from Dr. Monte. The undersigned assigns great weight to the remainder of her opinion. It is consistent with the conclusions in Finding 3 above.

(R. at 43.) Based on this discussion, Plaintiff claims that the ALJ erred because, in Plaintiff's view, the ALJ "made no specific statement" as to several of the limitations on which Dr. Monte opined. (Pl.'s Br. at 26–36.) Plaintiff contends, for example, that the ALJ made no specific findings as to whether the ALJ accepted or rejected Dr. Monte's opinion that Plaintiff suffered from an extreme limitation in understanding, remembering, and carrying out *complex* instructions, and a marked limitation in making judgments on *complex* work related decisions. (Pl.'s Br. at 29–30 (emphasis added).) But the ALJ's discussion—reproduced above—reveals that the ALJ necessarily rejected and assigned "little weight" to these limitations about "complex" tasks when the ALJ assigned "little weight" to the same tasks on the "simple" level. (R. at 43.) Plaintiff effectively argues that the ALJ was required use "magic words" to make clearer what is already apparent from the ALJ's discussion.

Plaintiff likewise claims that the ALJ made no specific statement as to whether the ALJ accepted or rejected Dr. Monte's opinion that Plaintiff suffered from a marked limitation in interacting appropriately with supervisors and coworkers. (Pl.'s Br. at 29.) But the ALJ's discussion noted above reveals that the ALJ assigned this limitation "little weight," particularly considering the structure of the ALJ's discussion. That is, this limitation appears in the ALJ's discussion immediately after the ALJ's statement assigning "little weight" to other portions of Dr. Monte's opinion and immediately before the ALJ's reasons for doing so. Indeed, after explaining why the ALJ assigned "little weight" to the preceding limitations, the ALJ shifted gears entirely, continuing on to discuss why the ALJ assigned "great weight" to the remainder of Dr. Monte's opinion. To be sure, the ALJ could have been clearer on this point. But given the structure of the ALJ's discussion, the Court can engage in the required review and is satisfied the ALJ included this limitation among the group assigned little weight.

This conclusion is bolstered by the ALJ's decision, viewed as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that an ALJ's decision should be "read as a whole" to determine if substantial evidence supports it). In other spots of the ALJ's decision, the ALJ assigned "little weight" to an opinion of Plaintiff's friend that Plaintiff had difficulty getting along with others. (R. at 22.) Contrary to that opinion, the ALJ found that "[i]n interacting with others, the claimant has mild limitations." (R. at 22.) The ALJ reasoned that "there is no evidence that [Plaintiff] has reduced functioning outside her home," and that she "has not engaged in altercations in public," nor has she "exhibited behavior with authority figures" like those in hospitals or doctors' offices. (R. at 22.) Thus, these statements, along with the RFC-specific statements noted above, show that contrary to Plaintiff's claim, the ALJ did not fail to address the limitation regarding Plaintiff's ability to appropriately interact with supervisors or coworkers. To the contrary, it was rejected.

The last limitation that Plaintiff claims the ALJ did not clearly accept or reject is Dr. Monte's opinion that Plaintiff had a moderate limitation in understanding and remembering simple instructions. But Plaintiff is mistaken; this limitation fell into the "remainder" of Dr. Monte's opinion that the ALJ accorded "great weight." (R. at 43.) And contrary to Plaintiff's claim (Pl.'s Br. at 31), the ALJ's RFC determination accounted for Plaintiff's moderate limitation in understanding and remembering simple instructions because the ALJ limited Plaintiff to "simple routine, unskilled work having no strict production quotas such as assembly line work" and permitted her to "be off task 5 percent of the work day in addition to normal breaks due to symptoms." (R. at 24). In fact, RFCs limiting a claimant to simple, routine tasks, like the RFC here, have sufficiently accounted for *even more extreme* limitations than Plaintiff's. *See Hill v. Colvin*, No. 14-cv-922, 2015 WL 5709028, at *3 (W.D. Pa. Sept. 28, 2015) (finding that RFC

restricting claimant "to simple, routine, and repetitive tasks" accounted for extreme limitation "in understanding, remembering and carrying out detailed instructions"). Accordingly, the Court discerns no error in the ALJ's analysis.

Next, Plaintiff advances an alternative argument—that substantial evidence does not support the ALJ's decision to reject the limitations offered by Dr. Monte, to the extent the ALJ clearly explained the reasons for rejecting them. (Pl.'s Br. at 26–36.) The Court disagrees. Specifically, the ALJ assigned little weight to the various limitations contained in Dr. Monte's opinion because her "opinion is not consistent with her treatment notes" and "the basis of [her] opinion is unclear when compared to the claimant's treatment notes from Dr. Monte." (R. at 43.) The ALJ also explained that Dr. Monte's opinion was "not consistent" with "the conclusion of staff at Nuva Vida." (*Id.*)

Although Plaintiff disagrees with the ALJ's conclusion that Dr. Monte's opinion was not consistent with treatment notes from Nuva Vida, Plaintiff does not meaningfully refute the ALJ's conclusion that the basis of Dr. Monte's opinion is unclear when compared to her treatment notes. (Pl.'s Br. 31–37.) Plaintiff's only response on this point appears to claim that Dr. Monte's opinion about Plaintiff's limitations is clear from and consistent with her treatment notes because she diagnosed Plaintiff with schizoaffective disorder and prescribed medication, and such medications are "indicative of significant mental impairments." (Pl.'s Br. at 33–34.) But having a diagnosis and taking medication does not establish a functional limitation; neither reveals the degree of functional limitation resulting from the Plaintiff's claimed impairments. See *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990); *see also* Rankin v. Colvin, No. 14-cv-491, 2014 WL 6453883, at *6 (W.D. Pa. Nov.

15

17, 2014) ("[T]he presence of a diagnosis alone is not sufficient to establish the existence of disabling functional limitations.").

Not only does Plaintiff fail to refute the ALJ's conclusion that the basis of Dr. Monte's opinion is unclear when compared to her treatment notes, substantial evidence supports it. Dr. Monte opined as to Plaintiff's alleged limitations in a check-the-box style report, unaccompanied by a thorough written explanation of the findings. (R. at 632–634.) Such records do not shed light on the basis of the opinion. They are also weak evidence that need not be given great weight. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (explaining that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Grogan v. Comm'r of Soc. Sec.*, 459 F. App'x 132, 138 n.7 (3d Cir. 2012) ("It is also noteworthy that the forms that Skobinsky filled out consisted largely of simply checking boxes. We have previously found the credibility of this type of opinion evidence to be suspect."); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (stating that when "residual functional capacity reports are unaccompanied by thorough written reports, their reliability is suspect"). Accordingly, the Court discerns no error in the ALJ's findings as to Dr. Monte and her opinions.

### C. Plaintiff's Pain and Limitations

Next, Plaintiff contends that the ALJ erred by improperly evaluating her alleged pain and limitations. None of Plaintiff's arguments are persuasive.

First, Plaintiff argues that the ALJ erred in evaluating the medical evidence relating to her mental limitations because the ALJ improperly rejected portions of Dr. Monte's opinion. (Pl.'s Br. at 38.) But as explained above, the Court finds no such error.

16

Second, Plaintiff claims, in passing, that the ALJ erred in stating that as to Plaintiff's mental limitations, "[n]othing in the record . . . suggests that the claimant's medications could not have been adjusted or changed to a greater extent than were if needed for better symptom control." (Pl.'s Br. at 38; R. at 42.) According to Plaintiff, this "lay speculation regarding a theoretically better course of treatment should be rejected." (Pl.'s Br. at 38.) But Plaintiff's undeveloped argument fails to explain how a harmful error resulted from this statement, as is required. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Indeed, Plaintiff does not argue that in making this statement, the ALJ substituted an improperly speculative lay opinion that Plaintiff could continue to improve for that of a medical expert who found the opposite. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (remanding because "the ALJ improperly supplanted the opinions of Morales's treating and examining physicians with his personal observation and speculation"). Instead, the ALJ appears to have made this statement while noting that after Plaintiff began taking her mental medications consistently, Dr. Monte observed her as "stable," and that she had "improved when taking mental medications on more than one occasion" in the past. (R. at 41–43.) In other words, the ALJ's statement is not improper, for it is not a speculative impression of Plaintiff's impairments made to supplant a physician's, but rather, a reasonable inference drawn directly from the objective evidence of record. *See Walck v. Comm'r of Soc. Sec.*, No. 15-cv-00687, 2016 WL 4271839, at *7 (M.D. Pa. Aug. 15, 2016) (finding *Morales'* "lay opinion" rule not applicable when ALJ's assessment was "based on reasonable inferences drawn directly from the objective evidence of record").

Third, Plaintiff claims that the ALJ erred in finding that Plaintiff's "reports of pain are not consistent with the medical record as a whole" or substantiated by "sufficient objective medical

17

evidence" (R. at 39–40), because "[c]ontrary to the ALJ's findings," Plaintiff's "pain, related to her underlying cirrhosis, kidney stones, and gastroparesis, is well document and supported by multiple objective tests and emergent visits for pain." (Pl.'s Br. at 39 n.10.) In support of this contention, Plaintiff cites a host of objective testing and corresponding conditions that she seemingly believes contradicts the ALJ's conclusions about her pain. (*Id.*) But citing testing and corresponding conditions does not help Plaintiff, as "it is well settled that disability is not determined merely by the presence of a diagnosed impairment, but by the effect that the impairment has upon the individual's ability to perform basic work activities and to engage in substantial gainful activity." *Everly v. Astrue*, No. 10-cv-1028, 2011 WL 4102806, at *3 (W.D. Pa. Sept. 14, 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

Thus, Plaintiff has failed to show that the ALJ erred. In addition, the ALJ provided sufficient reasons for finding that Plaintiff overstated the severity and degree of pain and limitations alleges, findings that are owed significant deference. (R. at 40); *Pergentile v. Berryhill*, No. 16-cv-1381, 2018 WL 5730173, at *7–8 (D.N.J. Nov. 1, 2018) (noting that "credibility determinations of an administrative judge are virtually unreviewable on appeal" and deferring to the ALJ's conclusion that Plaintiff overstated the extent of her symptoms when the ALJ explained that the "claimed intensity of such symptoms was not credible in the context of the medical evidence" (citation omitted)). The ALJ found, for example, that Plaintiff successfully controlled her ongoing gastritis with commonly prescribed medications and assigned a sedentary exertional level with a sit/stand option to accommodate for the amount of pain credited. (R. at 40.) As to Plaintiff's kidney related pain, the ALJ found that Plaintiff had failed to follow up with a urologist, have stones analyzed, failed to undergo a CT urogram as directed, reported no ongoing flank pain or back pain after July 2015, and that there was no evidence that Plaintiff followed up with a

18

surgeon as suggested by Dr. Manus. (*Id.*) The ALJ also noted that Plaintiff could "exercise regularly." (R. at 41.) Substantial evidence supports the ALJ's findings.

Fourth, Plaintiff claims that the ALJ erred in finding that Plaintiff "has been able to manage her personal care needs" like laundry, meals, chores, and shopping because this finding is "based on the failure to consider the extensive documentation from the [home health care providers] and testimony to the contrary, and is not supported by substantial evidence." (Pl.'s Br. at 39.) But as explained above, the ALJ did properly consider the home health care providers and evidence of record, and even if contrary evidence exists in the record, substantial evidence supports the ALJ's findings. Plaintiff's fourth argument thus has no merit.

Finally, Plaintiff claims that the ALJ erred by relying on Plaintiff's noncompliance with prescribed treatment to discredit her allegations of pain. In support of this very brief argument, Plaintiff cites to one page in the ALJ's decision, where the ALJ stated in a single sentence that "Ms. Lee noted that the claimant's diabetes was not controlled due to non-compliance." (R. at 26; Pl.'s Br. at 40.) But what is missing from Plaintiff's argument is any indication of how the ALJ relied on that allegedly incorrect evidence to discredit Plaintiff's alleged pain. Indeed, Plaintiff avoids explaining this point by vaguely arguing that "*[t]o the extent* the ALJ relied on noncompliance with prescribed treatment to discredit [Plaintiff's] allegations," the ALJ erred because the noncompliance was unintentional and remedied by the home health care provider's assistance. (Pl.'s Br. at 40 (emphasis added).) Aside from the fact that Plaintiff provides no support for the claim that this non-compliance was unintentional, Plaintiff cannot meet her burden of showing harmful error by pointing to one sentence in a lengthy opinion and vaguely alleging that the ALJ erroneously relied on it in reaching a conclusion without suggesting how or why it led to the erroneous conclusion. In fact, Plaintiff appears to mistakenly believe the burden is on

19

the Defendant to defend the ALJ's decision by claiming the Defendant has "failed to persuasively explain how it would be proper to uphold the ALJ's evaluation of [Plaintiff's] subjective complaints." (Pl.'s Rep. Br. at 11.) Plaintiff's argument fails.

### D. Step Five

Finally, Plaintiff argues that the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff could perform. (Pl.'s Br. at 40.) Specifically, Plaintiff claims that the ALJ erred because the ALJ posed questioning to the vocational expert based "on an unsupported RFC finding," and thus the vocational expert's testimony "cannot provide support for the ALJ's findings." (*Id.*) But because Plaintiff's argument hinges on the errors alleged and rejected above, this argument fails too. Because, as explained above, substantial evidence supports the ALJ's RFC determination, the step five conclusion must stand.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision denying benefits is **AFFIRMED**.

Dated: 1/31/2019 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge